UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDITH HARRIS,<br>Plaintiff,<br>v.<br>WELLS FARGO BANK, NA,<br>Defendant. | Case No. 26-cv-04790-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 11 |

Plaintiff Edith Harris alleges Defendant Wells Fargo Bank, N.A. ("Wells Fargo") failed to protect Plaintiff's Wells Fargo account from unauthorized transactions. (Dkt. No. 1-1.)[1] Wells Fargo's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(7) and 12(b)(6) is now pending before the Court. (Dkt. No. 11.) Having carefully considered the parties' submissions, and having had the benefit of oral argument on July 24, 2026, the Court concludes Wells Fargo has not shown why third-party Tony Maybin is a necessary party and its Rule 12(b)(7) motion is **DENIED**. But Plaintiff has failed to state a claim for all five causes of action, so the 12(b)(6) motion is **GRANTED** with leave to amend.

## BACKGROUND

### A. Complaint Allegations

Plaintiff is a senior citizen who has maintained a "consumer deposit account with Wells Fargo" for over 45 years. (Dkt. No. 1-1 ¶¶ 8-9.) Around September 2024, Plaintiff discovered "unauthorized withdrawals" from her Wells Fargo account "in the total approximate amount of $800,000." (*Id.* ¶ 10.) These online transactions included shopping at numerous online retailers, reoccurring payments to "TikTok Shop" and "Straight talk* Services[,]" "loan payments to First

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

Citizens Bank[,]" "several car loan payments to TD Auto Finance Bill Pay," and "several money transfers to an account in the name of a 'Tony Maybin[.]'" (*Id.* ¶ 11.)

Plaintiff "has never had online banking and is unlikely to start one at 91 years old[,]" and she "did not authorize, approve, or benefit from the said withdrawals." (*Id.* ¶¶ 13, 15.) When Plaintiff became aware of the unauthorized withdrawals, she "promptly notified Wells Fargo . . . including by telephone, in writing, and multiple in person visits to Wels [*sic*] Fargo's bank branch in accordance with federal law and the Account Agreement." (*Id.* ¶ 16.) Despite this notice, Wells Fargo "failed to conduct a reasonable investigation, failed to provisionally credit Plaintiff's account within the required time, and refused to restore Plaintiff's funds." (*Id.* ¶ 17.)

Plaintiff's Complaint contains five causes of action. First, Plaintiff alleges Wells Fargo's failure to investigate and resolve the unauthorized transactions violated the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693. (*Id.* ¶¶ 21-31.) Second, Plaintiff claims Wells Fargo breached its contract governing Plaintiff's account by "failing to safeguard the Account, failing to credit unauthorized withdrawals, and failing to comply with the applicable banking and consumer protection laws." (*Id.* ¶¶ 32-37.) Third, Plaintiff alleges Wells Fargo was negligent and breached its "duty to exercise reasonable care in safeguarding the Account, monitoring unauthorized activity, and properly investigating disputes[,]" because Wells Fargo was presumably aware Plaintiff's spending habits deviated from the unauthorized transactions. (*Id.* ¶¶ 38-43.) Fourth, Plaintiff asserts Wells Fargo's "misrepresentations and material omissions concerning consumer liability for unauthorized transfers and the burden imposed for unauthorized electronic fund transfers thereby engag[e] in an unfair and/or deceptive trade practice and an unconscionable trade practice" in violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. (*Id.* ¶¶ 44-53.) Finally, Plaintiff claims by failing to credit her account, Wells Fargo and the Doe Defendants have "appropriated and retained the property of Plaintiff, an elder, to wrongful use with the meaning of Cal. Welfare & Institutions Code, § 15610.30" and "intended to defraud Plaintiff[.]" (*Id.* ¶¶ 44-53.)

Plaintiff demands actual damages, statutory damages under the EFTA, an "order of disbursement . . . according to an allowance, accounting, contribution, and other compensatory

adjustments among the parties according to the principles of equity[,]" "restitution and relief under the Unfair Competition Law[,]" "compensatory damages for emotional distress and consequential harm[,]" costs of suit, attorney's fees pursuant to 15 U.S.C. § 1693m and Cal. Code Civ. Proc. § 1021.5[,]" and exemplary and treble damages. (*Id.* Prayers 1-9.)

**B. Procedural History**

Plaintiff filed this lawsuit in the Superior Court of Alameda County on March 20, 2026. (*Id.*) Wells Fargo removed the case to this Court based on diversity jurisdiction as well as federal question jurisdiction over the EFTA claim with supplemental jurisdiction over the remaining state law claims. (Dkt. No. 1 at 2-5.) It then moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(7) and 12(b)(6). (Dkt. No. 11.) The Court heard oral argument on the motion on July 24, 2026.

**DISCUSSION**

**I. WELLS FARGO'S RULE 12(B)(7) MOTION TO DISMISS**

A Rule 12(b)(7) motion contends the plaintiff failed to join a necessary party under Federal Rule of Civil Procedure 19. Rule 19 generally requires joinder of a person if "in that person's absence, the court cannot accord complete relief among existing parties" or if

> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)-(B). The person "must be joined" if these requirements are met, as long as joinder will not jeopardize the court's subject matter jurisdiction. Fed. R. Civ. P. 19(a)(1).

"If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). When evaluating a Rule 12(b)(7) motion to dismiss, the Court accepts the Complaint's allegations as true and draws all reasonable inferences in the plaintiff's favor. *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011) (citation omitted). The Court

may also consider evidence outside the complaint. *Potter v. Chevron Prods. Co.*, No. 17-cv-06689-PJH, 2018 WL 4053448, at *4 (N.D. Cal. Aug. 24, 2018) (citing *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960)). "The moving party has the burden of persuasion in arguing for dismissal" for failure to join. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (citations omitted).

Wells Fargo moves to dismiss the Complaint under Rule 12(b)(7) because Plaintiff failed to join Tony Maybin, who allegedly received transferred funds from Plaintiff's account. (Dkt. No. 11 at 10.) Wells Fargo argues Tony Maybin is a necessary party because he "likely played some part in the alleged unauthorized transfers" and "Plaintiff is required to sue everyone who she believes is responsible for her loss. Without the necessary parties joined, the Court is not in a position to 'accord complete relief among existing parties.'" (*Id.* (quoting Fed. R. Civ. P. 19(a)(1)(A).)

Wells Fargo fails to demonstrate Tony Maybin is a necessary party and does not explain why failure to join Tony Maybin or other unnamed parties would prevent the Court from according complete relief among the current parties. Simply arguing Tony Maybin is the "alleged recipient of a material portion of the transfers that form the basis of Plaintiff's claims" is insufficient. (Dkt. No. 14 at 3); *see Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013) (finding complete relief is concerned only with meaningful relief between the current parties). All of Plaintiff's claims are rooted in Wells Fargo's alleged failure to investigate the unauthorized transactions, safeguard Plaintiff's account, and credit the account, not Tony Maybin's receipt of funds.

Wells Fargo's reliance on *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934 (9th Cir. 2022) is misplaced. In *Klamath*, a case between various irrigation districts, agricultural associations, and the federal government, the Ninth Circuit held several Native American tribes were necessary parties because the case could have threatened the tribes' sovereign water and fishing rights. *See id.* at 945. This case is not analogous because the Native tribes in *Klamath* had unique rights which were implicated by the case, unlike Tony Maybin. Wells Fargo's argument Tony Maybin is more than a "peripheral tortfeasor" because he received a

large portion of funds does not negate the "rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes*, 498 U.S. 5, 7 (1990).

Wells Fargo has thus not demonstrated Tony Maybin is a necessary party under Rule 19 such that his joinder is required, and its Rule 12(b)(7) motion is denied.

## II. WELLS FARGO'S RULE 12(B)(6) MOTION TO DISMISS

A complaint should be dismissed under Rule 12(b)(6) if it lacks sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted). A claim is facially plausible when it "plead[s] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a motion to dismiss, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Dismissal under Rule 12(b)(6) is proper when the complaint "lacks a cognizable legal theory" or "fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (citation omitted).

### A. Electronic Fund Transfer Act, 15 U.S.C. § 1693[2]

The EFTA is a federal consumer protection law "establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). The EFTA and its implementing regulation, Regulation E, regulate electronic fund transfers which directly affect consumer accounts. 15 U.S.C. § 1693a(7). Wells Fargo moves to dismiss the first cause of action alleging EFTA violations based on the statute of limitations. (Dkt. No. 11 at 12.) EFTA claims must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). Wells Fargo bears the burden of demonstrating Plaintiff's

[2] Wells Fargo's Bank Secrecy Act argument is unpersuasive. All the cases it cites as support had claims brought under or implicating the Act. Not so here.

EFTA claim is barred by the one-year statute of limitations. *See California Sansome Co. v. United States Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995) ("A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred.").

The EFTA requires consumers to give financial institutions oral or written notice of an error within 60 days of receiving documentation containing the error. 15 U.S.C. § 1693f(a). Qualifying errors include, among others, "an unauthorized electronic fund transfer[.]" 15 U.S.C. § 1693f(f)(1). If the consumer provides their name, account number, indicates the error and the amount of such error, and sets forth the reasons for the consumer's belief an error occurred, the financial institution is required to investigate the error and report results to the consumer within ten business days. 15 U.S.C. § 1693f(a). And, if it finds an error did occur, it must correct the error within one business day after determining the error occurred. 15 U.S.C. § 1693f(b).

Drawing all reasonable inferences in Plaintiff's favor, the Complaint's allegations compel the conclusion the EFTA claim is barred by the statute of limitations. The Complaint alleges unauthorized electronic transfer errors: Plaintiff "discovered unauthorized withdrawals from [her] Account in the total approximate amount of $800,000" "[b]eginning on or around September 2024," and "[a]s soon as Plaintiff became aware of these unauthorized withdrawals, Plaintiff promptly notified Wells Fargo . . . including by telephone, in writing, and multiple in person visits at Wels [*sic*] Fargo's bank branch in accordance with federal law and the Account Agreement." (Dkt. No. 1-1 ¶¶ 10, 16.) Drawing all reasonable inferences in Plaintiff's favor, she timely reported the error to Wells Fargo within 60 days of receiving or discovering documentation[3] reflecting the error, around September 2024. So, at the latest, she provided Wells Fargo notice at the end of November 2024. Again, drawing inferences in Plaintiff's favor, her notice contained the required information set forth in 15 U.S.C. § 1693f(a). So, the violation would have occurred at the latest 11 business days after Plaintiff reported the error when Wells Fargo failed to investigate the error or provisionally credit her account. Alternatively, a violation could have occurred after 14 business days if Wells Fargo determined after its investigation no error occurred,

[3] For purposes of resolving the motion to dismiss, the Court assumes, without deciding, the statute of limitations was tolled until Plaintiff discovered the unauthorized transfers.

but failed to deliver or mail Plaintiff an explanation of its finding within three business days after the conclusion of its investigation. 15 U.S.C. § 1693f(d). Regardless, any violation would have occurred no later than December 2024, thus triggering the one-year statute of limitations. But Plaintiff did not file this action until March 2026 (Dkt. No. 1-1 at 2)—at least three months too late. So, construing the pleaded facts in Plaintiff's favor, her EFTA claim is barred by the statute of limitations and must be dismissed. *See Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (a claim may be dismissed under a statute of limitations when the "running of the statute is apparent on the face of the complaint.") (citation omitted).

**B. Breach of Contract**

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Bodenburg v. Apple Inc.*, 146 F.4th 761, 767 (9th Cir. 2025) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)). "[A] plaintiff must identify a specific contract provision breached by the defendant." *Bodenburg*, 146 F.4th at 767 (quoting *Satvati v. Allstate Northbrook Indem. Co.*, 634 F. Supp. 3d 792, 797 (C.D. Cal. 2022).

The Complaint alleges Wells Fargo and Plaintiff "entered into a valid contract governing [Plaintiff's] Account(s)" and while Plaintiff performed all or most of the contract's requirements, Wells Fargo breached the contract by "failing to safeguard the Account, failing to credit unauthorized withdrawals, and failing to comply with applicable banking and consumer protection laws." (Dkt. No. 1-1 ¶¶ 33-35.) This breach was a "substantial factor in causing Plaintiff's harm" and "damaged" Plaintiff "in an amount to be proven at trial." (*Id.* ¶¶ 36-37.) These allegations are insufficient because, among other things, Plaintiff does not identify the contract provision(s) Wells Fargo allegedly breached. So, the breach of contract claim must be dismissed.

**C. Negligence**

The elements of a negligence cause of action are "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917-18 (1996) (quotation marks and

citations omitted). Plaintiff alleges Wells Fargo was negligent in "failing to detect, prevent, or remedy the unauthorized withdrawals" because it breached its duty to exercise reasonable care in monitoring her account for unauthorized activity and properly investigate disputes. (Dkt. No. 1-1 ¶¶ 39-40.) Wells Fargo insists Plaintiff's negligence claim must be dismissed because it does not owe Plaintiff a duty of care, and because the claim is barred under the economic loss doctrine.

Plaintiff's negligence claim fails because Plaintiff has not plausibly alleged a duty of care. "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991) (citation omitted). Generally, "banks are not fiduciaries for their depositors," and instead the bank-depositor relationship is "founded on contract" as opposed to tort law. *Smith v. Wells Fargo Bank, N.A.*, 809 F. Supp. 3d 922, 943 (N.D. Cal. 2025) (citing *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (1998) (quotation marks omitted)). A bank may owe depositors certain duties, but these are narrowly prescribed and governed by the deposit agreement—a contract. This contractual relationship "does not involve any implied duty to supervise account activity or to inquire into the purpose for which the funds are being used." *Gray v. JPMorgan Chase Bank, N.A.*, No. 23-55318, 2024 WL 1342619, at *1 (9th. Cir. Mar. 29, 2024) (quoting *Kurtz-Ahlers, LLC v. Bank of Am.*, N.A., 48 Cal. App. 5th 952, 956 (2020)). "Absent controlling precedent that Defendants owed a duty of care to Plaintiff beyond their contractual relationship, Plaintiff's negligence claim is barred by the economic loss rule. Fundamentally, purely economic losses flowing from a financial transaction gone awry ... are primarily the domain of contract and warranty law or the law of fraud, rather than of negligence." *Smith*, 809 F. Supp. 3d at 944 (cleaned up).

An affirmative duty of care may nonetheless arise if "there exists a special relationship between the parties or some other set of circumstances[.]" *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 209 (2021). But California courts generally conclude there is no special relationship between financial institutions and customers when the parties operate in conventional roles. *See Nymark*, 231 Cal. App. 3d at 1096 (finding no duty of care between a bank and a borrower when the bank's involvement in the loan transaction is within its conventional role as a money lender).

Plaintiff bases the existence of a duty of care on Wells Fargo's supposed awareness of Plaintiff's "spending pattern [*sic*] and habits" because this should have raised "enough red flags to draw [Wells Fargo's] attention to the nefarious unauthorized transactions[.]" (Dkt. No. 1-1 ¶ 42.) But Plaintiff does not cite any cases to support the conclusion such facts created a special relationship, or that the parties were operating in non-conventional roles. Since Plaintiff has not alleged facts to support Wells Fargo having a non-contractual duty of care arising out of a special relationship, she has failed to state a claim for negligence. *See Gray*, 2024 WL 1342619, at *1 (concluding the defendant bank had no duty of care to monitor withdrawals made by plaintiffs—an elderly couple—who fell victim to an online scam and transferred money to the scammers); *see also Smith*, 809 F. Supp. 3d at 943-44 (holding the defendant bank owed no non-contractual duty of care to elderly customer who was defrauded by her stepson forging power of attorney to access her funds, thus barring the negligence claim under economic loss doctrine). Plaintiff's negligence claim must therefore be dismissed.

The negligence claim is also barred under the economic loss doctrine. "Th[is] judicially created doctrine bars recovery in negligence for pure economic losses when such claims would disrupt the parties' private ordering, render contracts less reliable as a means of organizing commercial relationships, and stifle the development of contract law." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 915 (2022). "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 989 (2004) (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999)). The California Supreme Court has applied the economic loss rule to bar recovery when "the parties[] [had a] contractual relationship [due to] how that relationship might be disrupted by recognition of the duty [of care the] plaintiff advance[d]." *Sheen*, 12 Cal. 5th 915-16.

As stated above, the Complaint does not allege facts that would support the existence of a duty independent of the deposit agreement; instead, the claim mirrors the breach of contract claim. Plaintiff failed to address this issue in her opposition brief, and thus appears to concede dismissal is appropriate. *See Silva v. City of San Leandro*, 744 F. Supp. 2d 1036, 1050 (N.D. Cal. 2010)

("Plaintiffs do not address this argument in their Opposition brief, implicitly conceding that these claims fail."). So, the Court dismisses the negligence claim for lack of duty of care and, relatedly, as pled, the economic loss doctrine also bars the claim.

**D. California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.**

The UCL defines unfair competition as "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The statute is "written in the disjunctive" and describes three varieties of unfair competition, with each as a basis for liability. *Cel-Tech Comm'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation omitted). Plaintiff alleges violations of all three prongs. The Complaint asserts "by refusing to credit Plaintiff's account for unauthorized electronic fund transactions[,] [Wells Fargo] thereby engag[ed] in an unfair and/or deceptive trade practice and an unconscionable trade practice." (Dkt. No. 1-1 ¶ 46.) Further, Wells Fargo "willfully engaged in the illegal conduct alleged[,]" its policies and practices "have decided [*sic*] and/or is [*sic*] likely to deceive members of the public, including the Plaintiff[,]" and these acts and omissions "constitute unlawful, unfair, and fraudulent business practices." (*Id.* ¶¶ 47-51.) Wells Fargo moves to dismiss Plaintiff's UCL claim on the grounds she has not alleged any facts demonstrating her entitlement to equitable remedies. (Dkt. No. 11 at 9.)

"The UCL provides only equitable remedies." *Mish v. TForce Freight, Inc.*, 21-cv-049094-EMC, 2021 WL 4592124, at *5 (N.D. Cal. Oct. 6, 2021) (citing *Nationwide Biweekly Admin, Inc. v. Superior Ct.*, 9 Cal. 5th 279, 292 (2020)). While Plaintiff alleges she seeks equitable relief including restitution and injunctive relief, she does not adequately allege a basis for either. Restitution under Section 17203 is limited to restoration of any interest in money or property which may have been obtained through unfair competition; that is, the plaintiff must have lost money or property, and the defendant must have acquired it. *See Zhang v. Superior Ct.*, 57 Cal. 4th 364, 371 (2013) (citations omitted). Drawing inferences in Plaintiff's favor, the Court accepts as true that she lost money in her Wells Fargo account due to unauthorized transfers. (Dkt. No. 1-1 ¶ 10.) But the Complaint does not allege Wells Fargo actually acquired these funds—rather, Tony Maybin, various online stores, and other parties are the alleged recipients of

this money. (*Id.* ¶ 11.) Thus, Plaintiff has not plausibly alleged she is entitled to restitution from Wells Fargo.

As for injunctive relief, the Complaint simply demands it in an enumerated list of other requests for relief. (*Id.* ¶ 53.) For unfair competition claims, "a plaintiff cannot receive an injunction for past conduct unless [s]he shows that the conduct will probably recur." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999) (citing *People v. Toomey*, 157 Cal. App. 3d 1, 20 (1984)). "Ordinarily, injunctive relief is available to prevent threatened injury and is not a remedy designed to right completed wrongs." *Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 464-65 (2005) (internal quotation marks and citation omitted). Plaintiff fails to allege Wells Fargo's conduct is likely to recur, and her opposition does not address Wells Fargo's argument Plaintiff has shown no basis for entitlement to injunctive relief.

Because Plaintiff has failed to allege a basis for either form of equitable relief, her UCL claim must be dismissed.

**E. Elder Abuse, Cal. Welfare & Institutions Code, § 15610.30**

Finally, Wells Fargo moves to dismiss Plaintiff's financial elder abuse claim for failure to state a claim. Plaintiff does not specifically allege which subsection of the law Wells Fargo violated, so the Court addresses both Cal. Welf. & Inst. Code § 15610.30(a)(1)-(2) and (b). Subsection (a)(1) of the California Financial Elder Abuse Law provides "[f]inancial abuse of an elder . . . occurs" when a person or entity "[t]akes, secretes, appropriates, obtains, or retains . . . property of an elder . . . for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(1). Under subsection (b),

> [a] person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes . . . the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder.

Cal. Welf. & Inst. Code § 15610.30(b). The Complaint alleges by failing to credit Plaintiff's account, "Wells Fargo appropriated and retained the property of Plaintiff, an elder, to wrongful use[.]" (Dkt. No. 1-1 ¶¶ 59-60.) Plaintiff alleges this claim "include[s] not only those who obtain

or misappropriate an elder's property through fraud or undue influence, but also those individuals and entities who assist such wrongful conduct." (*Id.* ¶ 61.)

But Plaintiff's factual allegations support an inference only other third parties—like Tony Maybin and online retailers—received her money, not Wells Fargo. (*Id.* ¶ 11.) She also does not allege facts to support an inference Wells Fargo knew its conduct would cause harm. The Ninth Circuit upheld dismissal of a financial elder abuse claim on similar grounds in *Bortz v. JP Morgan Chase Bank, N.A.*, No. 22-55582, 2023 WL 4700640, at *1 (9th Cir. Jul. 24, 2023). Plaintiff has therefore failed to state a plausible claim under subsections (a)(1) and (b) of the California Financial Elder Abuse Law.

Plaintiff has also failed to allege a claim under subsection (a)(2), which creates liability for a person or entity that "[a]ssists in taking, secreting, appropriating, obtaining, or retaining . . . property of an elder . . . for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(2). When "a bank provides ordinary services that effectuate financial abuse by a third party, the bank may be found to have 'assisted' the financial abuse only if it knew of the third party's wrongful conduct." *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 745 (2010). This requires the bank to "actually kn[o]w those transactions were assisting the customer in committing a specific tort." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005). Plaintiff does not allege facts that support an inference Wells Fargo had actual knowledge of the wrongful conduct of any third party. The bare assertion Wells Fargo and the Doe defendants "intended to defrauded Plaintiff" is insufficient to plausibly support an inference Wells Fargo actually knew it was assisting in committing a tort, and it fails to meet the specific pleading requirements for fraud in Rule 9(b). (Dkt. No. 1-1 ¶ 60.)

Because Plaintiff has not properly alleged Wells Fargo retained any of her property or intended to defraud her, her financial elder abuse claim must be dismissed.

## III. LEAVE TO AMEND

Plaintiff's opposition requests leave to amend should the Court dismiss her claims. (Dkt. No. 12 at 25-26.) Leave to amend is generally granted unless the claim "[can]not possibly be cured by the allegation of other facts." *United Broth. of Carpenters and Joiners of America v.*

*Building and Construction Trades Dep't*, 770 F.3d 834, 845 (9th Cir. 2014) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations omitted)). While the new facts Plaintiff introduces in her opposition may not be considered on a motion to dismiss, they may be considered when weighing whether leave to amend is appropriate. Because Plaintiff initially filed her Complaint in state court, she did not have to comply with the federal pleading standard in *Iqbal* and *Twombly*. *See generally Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). So, the Court grants Plaintiff leave to amend the claims alleged in her Complaint to the extent she can do so consistent with Federal Rules of Civil Procedure 11.

**CONCLUSION**

For the reasons articulated above, the Court **DENIES** Wells Fargo's Rule 12(b)(7) motion and **GRANTS** its Rule 12(b)(6) motion with leave to amend. Any amended complaint must be filed by **August 20, 2026**. Plaintiff may not add new defendants or claims without further leave of court.

This Order disposes of Docket No. 11.

**IT IS SO ORDERED.**

Dated: July 30, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California