United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDITH HARRIS,

Plaintiff,

v.

WELLS FARGO BANK, NA,

Defendant.

Case No. 3:26-cv-04790-JSC

**ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Re: Dkt. No. 23

Plaintiff Edith Harris alleges Defendant Wells Fargo Bank, N.A. failed to protect her Wells Fargo account from unauthorized transactions. The Court previously granted Wells Fargo's motion to dismiss for failure to state a claim. (Dkt. No. 16.[1]) Plaintiff thereafter filed her First Amended Complaint (FAC) and Wells Fargo again moves to dismiss. (Dkt. Nos. 21, 28.) After carefully considering the arguments and briefing submitted, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS IN PART and DENIES IN PART the motion to dismiss. Plaintiff has plausibly pled a breach of contract claim, but her other claims fail to state a claim.

## DISCUSSION

The Court assumes the parties' familiarity with the factual and procedural background, and incorporates its prior summary by reference. (Dkt. No. 16 at 1-3.) Although the FAC expands on Plaintiff's factual allegations, it largely tracks the original complaint. Plaintiff repleads her claims

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

for: (1) violation of the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693; (2) breach of contract; (3) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200; and (4) elder abuse; and (5) replaced her negligence claim with a negligent misrepresentation claim. (Dkt. No. 21.)

**A. EFTA Claim**

The EFTA is a federal consumer protection law "establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). The EFTA and its implementing regulation, Regulation E, regulate electronic fund transfers which directly affect consumer accounts. 15 U.S.C. § 1693a(7). The EFTA requires consumers to give financial institutions oral or written notice of an error within 60 days of receiving documentation containing the error. 15 U.S.C. § 1693f(a). Qualifying errors include, among others, "an unauthorized electronic fund transfer[.]" 15 U.S.C. § 1693f(f)(1). If the consumer provides their name, account number, indicates the error and the amount of such error, and sets forth the reasons for the consumer's belief an error occurred, the financial institution is required to investigate the error and report results to the consumer within ten business days. 15 U.S.C. § 1693f(a). If the financial institution cannot complete its investigation within ten business days, the financial institution may take up to 45 days upon receiving notice of the error if it provisionally credits the consumer in the interim. 15 U.S.C.A. § 1693f(c); 12 C.F.R. § 205.11 (c)(2)(i).

EFTA claims must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). The Court previously granted Wells Fargo's motion to dismiss the EFTA claim as barred by the statute of limitations concluding:

> Drawing all reasonable inferences in Plaintiff's favor, she timely reported the error to Wells Fargo within 60 days of receiving or discovering documentation reflecting the error, around September 2024. So, at the latest, she provided Wells Fargo notice at the end of November 2024. Again, drawing inferences in Plaintiff's favor, her notice contained the required information set forth in 15 U.S.C. § 1693f(a). So, the violation would have occurred at the latest 11 business days after Plaintiff reported the error when Wells Fargo failed to investigate the error or provisionally credit her account. Alternatively, a violation could have occurred after 14 business days if Wells Fargo determined after its investigation no error occurred but

> failed to deliver or mail Plaintiff an explanation of its finding within three business days after the conclusion of its investigation. 15 U.S.C. § 1693f(d). Regardless, any violation would have occurred no later than December 2024, thus triggering the one-year statute of limitations. But Plaintiff did not file this action until March 2026 (Dkt. No. 1-1 at 2)—at least three months too late.

(Dkt. No. 16 at 6-7.) The FAC fails to allege facts which support a different conclusion. To the extent Plaintiff now alleges she reported additional transactions "up until January 3, 2025" (FAC at ¶¶ 18, 36), this at most extends the date of alleged violation to January 14, 2025 (11 days after Plaintiff reported the last error) or February 18, 2025 (45 days after Plaintiff reported the last error excluding holidays). Again, Plaintiff did not file this action until March of 2026—after the one-year statute of limitations would have run.

Plaintiff's argument that equitable tolling and fraudulent concealment extend the statute of limitations is unavailing. First, Plaintiff offers no legal authority holding either theory applies to EFTA claims. *Cf. Rotkiske v. Klemm*, 589 U.S. 8, 12 (2019) (declining to read a discovery rule into the FDCPA's statutorily created statute of limitations).[2] Second, even if these theories were available, they are not alleged in the FAC and are raised for the first time in her opposition brief. (Dkt. No. 28 at 16-17.) Third, the additional facts provided in the opposition brief would not be sufficient to invoke either exception because Plaintiff concedes she discovered the transactions in August 2024 and was represented by counsel at least as of January 2025—well within the statute of limitations. *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (concluding extension of equitable tolling to the plaintiff's claims "contrary to the purpose" of the statute of limitations ensuring timely filing because the defendants did not conceal the existence of the plaintiff's cause of action or prevent him from filing his action within the statute of limitations). Nor has Plaintiff identified any facts which would support an inference of fraud by Well Fargo; that is, that it affirmatively misled her. *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) ("[The plaintiff] carries the burden of pleading and proving fraudulent concealment; it must

---

[2] Plaintiff's reliance on *Kwai Fun Wong v. Beebe*, is misplaced as it considered whether the statute of limitations under the Federal Torts Claims Act was subject to equitable tolling emphasizing the availability of equitable tolling depended on the language of the statute at issue. 732 F.3d 1030, 1050-51 (9th Cir. 2013); *see also Rotkiske*, 589 U.S. at 13 ("When interpreting limitations provisions, as always, 'we begin by analyzing the statutory language.'").



United States District Court
Northern District of California

plead facts showing that [the defendant] affirmatively misled it, and that [the plaintiff] had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts.").

Accordingly, the EFTA claim is dismissed as time barred and further leave to amend would be futile.

**B. Breach of Contract Claim**

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Bodenburg v. Apple Inc.*, 146 F.4th 761, 767 (9th Cir. 2025) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)). "[A] plaintiff must identify a specific contract provision breached by the defendant." *Bodenburg*, 146 F.4th at 767 (quoting *Satvati v. Allstate Northbrook Indem. Co.*, 634 F. Supp. 3d 792, 797 (C.D. Cal. 2022).

The Court previously dismissed Plaintiff's breach of contract claim because she had not identified the contract provision(s) Wells Fargo allegedly breached. (Dkt. No. 16 at 7.) In the FAC, Plaintiff identifies the following contracts: "Deposit Account Agreement, Online Access Agreement, and Online Banking and Bill Pay Service(s) Agreement." (Dkt. No. 21 at ¶ 53.) Plaintiff alleges Wells Fargo breached these agreements because (1) it agreed to conduct a speedy and thorough investigation, but it did not, (2) it agreed if it needed more time to investigate it would credit the customer's account within 10 days, but it did not (citing the Deposit Account Agreement, Page 26 and Online Access Agreement, Page 9); and (3) it agreed to properly vet requests for account access, but it did not because it allowed others to set up an online account against Plaintiff's account and failed to flag and report fraudulent transactions (citing the Online Access Agreement). (*Id*. at ¶¶ 54-58.)

As a threshold matter, Plaintiff has not alleged she was a party to the Online Access or the Online Banking and Bill Pay Service(s) Agreement. To the contrary, she specifically alleges she did not sign up for any online services. (Dkt. No. 21 at ¶ 10 ("Plaintiff never had online banking"); ¶ 13 ("Plaintiff has never had online banking"); ¶ 16 (Plaintiff did not request paperless

United States District Court
Northern District of California

online delivery, does not have an email account, and is unable to review electronic documents); *see also* ¶ 60 ("By letter dated October 10, 2024, Wells Fargo Bank acknowledged to Plaintiff they have cancelled the unauthorized enrollment of Plaintiff in **"our Online Banking and Bill Pay Service(s) without [Plaintiff's] knowledge or consent. We have canceled the service and apologize for any concern or inconvenience this may have caused.**") (emphasis in original)).) Plaintiff has thus not plausibly alleged a breach of contract claim as to these contracts to which she alleges she was not a party. *See Emerald Bay Cmty. Assn. v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1092 (2005) ("generally, only a party to the contract may sue for breach of the agreement's terms.").

This leaves the Deposit Agreement. Plaintiff appears to allege a breach of the following portion of the Deposit Agreement:

> We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we need more time, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

(Dkt. No. 24-1, Ex. C at 29.[3]) This language tracks the EFTA requirements for investigating reports of unauthorized activity. *See* 15 U.S.C. § 1693f(a)-(c); *see also* Dkt. No. 24-1, Ex. C at 27 (stating the Deposit Agreement Electronic Fund Transfer Services "provisions apply to electronic fund transfers to or from your consumer deposit account that are governed by Subpart A of Regulation E.'").)

[3] Wells Fargo filed a request for judicial notice and notice of incorporation by reference attaching documents specifically referenced in the FAC including: (1) Wells Fargo's October 15, 2024 letter (Exhibit A), (2) Plaintiff's January 3, 2025 letter (Exhibit B), (3) the Deposit Account Agreement (Exhibit C), (4) the Online Access Agreement (Exhibit D), and (5) Plaintiff's opposition to the prior motion to dismiss (Exhibit E). (Dkt. No. 24.) Exhibits A-D may be considered under the incorporation by reference doctrine. *See U.S. v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003) ("mere mention of the existence of a document is insufficient to incorporate the contents of a document," but a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). The FAC contains detailed allegations as to these documents and quotes them extensively. As to Exhibit E, the request is denied because the Court does not need to take judicial notice of pleadings in this action.

United States District Court
Northern District of California

**1. Deposit Agreement Gravamen Theory**

Wells Fargo insists Plaintiff's attempt to recast her EFTA claim as a breach of contract claim to avoid the statute of limitations fails under the gravamen rule. "[C]ourts routinely bar causes of action, including for breach of written contract, where the gravamen rule dictates a shorter statute of limitations." *See Vera v. REL-BC, LLC*, 66 Cal. App. 5th 57, 66–67 (2021) (collecting cases).

Wells Fargo has not met its burden of showing that as a matter of law the "gravamen rule" requires application of the EFTA's one-year statute of limitations. The two cases Wells Fargo highlights—*Vera v. REL-BC, LLC*, 66 Cal. App. 5th 57, 66–67 (2021) and *Prof'l Collection Consultants v. Lujan*, 23 Cal. App. 5th 685, 690–91 (2018) (Dkt. No. 29 at 13)—are different from the circumstances here. *Vera* held:

> In determining whether an action is on the contract or in tort, ... it is the nature of the grievance rather than the form of the pleadings that determines the character of the action. If the complaint states a cause of action in tort, and it appears that this is the gravamen of the complaint, the nature of the action is not changed by allegations in regard to the existence of or breach of a contract.

*Vera*, 66 Cal. App. 5th at 64–65. The court held the gravamen of the plaintiff's claim that the defendants failed to disclose material facts was the tort of fraud and thus the shorter fraud statute of limitations applied. *Id.* at 65. But here, Wells Fargo does not argue that the gravamen of the complaint is a tort; instead, it asks the Court to hold the gravamen is a federal statute. *Vera* thus does not support applying the EFTA's statute of limitations to a breach of contract claim.

*Lujan* is likewise insufficiently similar to support dismissal at this early stage. There, a debt collector sued a consumer for credit card debt. At summary judgment the consumer argued the shorter statute of limitations from the credit card agreement applied rather than the longer statute of limitations of the "common counts" alleged by the debt collector. The court held the shorter Delaware breach of contract statute of limitations applied because the gravamen of the dispute was to collect debt incurred pursuant to the credit card agreement. 66 Cal. App. 5th at 691-92. Here, Wells Fargo asks the Court to hold the opposite: the gravamen of the claim is a specific federal statute rather than the deposit agreement. So, *Lujan* does not support Wells Fargo's argument.

Further, Wells Fargo's insistence the Deposit Agreement does not create a contractual obligation independent of the EFTA is unsupported. (Dkt. No. 23 at 18.) The relevant Deposit Agreement provisions do not mention the EFTA. (Dkt. No. 24-1, Ex. C. at 29.) *In re Bank of Am. California Unemployment Benefits Litig*., 674 F. Supp. 3d 884, 929 (S.D. Cal. 2023), on reconsideration in part, 2024 WL 3174380 (S.D. Cal. June 25, 2024), does not support Wells Fargo argument as the analysis assumed the breach of contract claim was a standalone claim. *Id.* at 929; 2024 WL 3174380 at *5.

**2. Failure to Allege the Deposit Agreement Terms**

Next, Wells Fargo argues the breach of contract claim fails because the FAC does not recite the Deposit Agreement terms allegedly breached and Plaintiff did not attach the Deposit Agreement to the FAC. But, at Wells Fargo's request, the Court takes judicial notice of the Deposit Agreement; it includes the specific terms Plaintiff alleges were breached. (Dkt. No. 24-1, Ex. C at 29.) So, the Court declines to dismiss on this basis.

**3. Other Breaches**

To the extent Plaintiff vaguely refers to Wells Fargo's failure to safeguard her account and monitor and alert Plaintiff of suspicious and/or fraudulent transactions, Plaintiff has not plausibly alleged the Deposit Agreement imposed such a duty. (Dkt. No. 21 at ¶ 62.)

***

The motion to dismiss the breach of contract claim is DENIED as to the unauthorized transaction investigation promise; the motion to dismiss this claim is otherwise GRANTED.

**C. Negligent Misrepresentation Claim**

The Court previously dismissed Plaintiff's negligence claim because Plaintiff had not alleged a duty of care and the claim was barred under the economic loss doctrine. (Dkt. No. 16 at 7-9.) The FAC seeks to plead a negligent misrepresentation claim instead. (Dkt. No. 21 at ¶¶ 65-75.) The Court's Order granting the motion to dismiss prohibited Plaintiff from adding new claims or parties without leave of Court. (Dkt. No. 16 at 13.) The claim is thus subject to dismissal on this basis alone.

Even if the Court were to grant leave, the claim would be barred by the economic loss

doctrine for the same reasons the doctrine bars the negligence claim. (Dkt. No. 16 at 9-10.) "Th[is] judicially created doctrine bars recovery in negligence for pure economic losses when such claims would disrupt the parties' private ordering, render contracts less reliable as a means of organizing commercial relationships, and stifle the development of contract law." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 915 (2022). "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 989 (2004) (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999)). The California Supreme Court has applied the economic loss rule to bar recovery when "the parties[] [had a] contractual relationship [due to] how that relationship might be disrupted by recognition of the duty [of care the] plaintiff advance[d]." *Sheen*, 12 Cal. 5th 915-16.

Plaintiff's insistence that the economic loss rule does not bar negligent misrepresentation claims is premised on a misreading of the California Supreme Court's decision in *Robinson Helicopter*. In *Robinson Helicopter*, the court held "the economic loss rule d[id] not bar [the plaintiff's] fraud and intentional misrepresentation claims because they were *independent* of [the alleged] breach of contract." 34 Cal. 4th at 991 (emphasis added); *see also Sheen*, 12 Cal. 5th at 923 (holding the economic loss rule did not bar the negligent misrepresentation claim because it was based on misrepresentations Wells Fargo allegedly made during a phone call—independent of the breach of contract claim based on the loan modification application). Not so here. Plaintiff's claim is premised on Wells Fargo's alleged representations that

> they were investigating the unauthorized transactions, that Plaintiff's funds would be provisional credit-restored within 10 business days pursuant to bank policy, and that Plaintiff need not take further immediate steps to secure or freeze the account, but that Plaintiff should continue to report additional unauthorized online transactions.

(Dkt. No. 21 at ¶ 67.) These allegations do not support the existence of a duty *independent* of the Deposit Agreement; instead, the claim mirrors the breach of contract claim.

Accordingly, Plaintiff's negligent misrepresentation claim is dismissed.

**D. UCL Claim**

The UCL defines unfair competition as "any unlawful, unfair, or fraudulent business act or

United States District Court
Northern District of California

practice." Cal. Bus. & Prof. Code § 17200. "The UCL provides only equitable remedies." *Mish v. TForce Freight, Inc.*, 21-cv049094-EMC, 2021 WL 4592124, at *5 (N.D. Cal. Oct. 6, 2021) (citing *Nationwide Biweekly Admin, Inc. v. Superior Ct.*, 9 Cal. 5th 279, 292 (2020)).

The Court previously dismissed Plaintiff's UCL claim because although Plaintiff alleges she seeks equitable relief including restitution and injunctive relief, she did not adequately allege a basis for either. (Dkt. No. 16 at 10-11.) In the FAC, Plaintiff alleges she is entitled to "an order of restitution compelling Wells Fargo Bank to dislodge and restore the vested $7,678.33 wrongfully retained, returning Plaintiff to the status quo ante." (Dkt. No. 21 at ¶ 89.) This is the amount Plaintiff separately alleges Wells Fargo offered to pay her on April 17, 2025 "in exchange for a fully executed settlement agreement." (*Id.* at ¶ 26.) However, in her motion to dismiss opposition, Plaintiff appears to abandon this theory and advances a different theory of restitution. Plaintiff now contends she is entitled to $800,000 in restitution to restore the unauthorized online transactions. (Dkt. No. 28 at 26-27.) But, as the Court previously held, Plaintiff does not allege Wells Fargo acquired the $800,000; instead, she alleges Tony Maybin, various online stores, and other parties are the alleged recipients of this money. (Dkt. No. 16 at 10-11; Dkt. No. 21 at ¶ 11.) Plaintiff thus has not plausibly alleged a basis for restitution based on the funds retained by third-parties. It is unclear if Plaintiff continues to contend she is entitled to $7,678.33 in restitution given her opposition brief states that Wells Fargo paid her nearly this amount—$7,608.27—in May 2025. (Dkt. No. 28 at 10.)

Plaintiff's UCL claims is dismissed as Plaintiff has failed to cure the pleading defects.

**E. Financial Elder Abuse Claim**

California's Financial Elder Abuse Law imposes liability when a person or entity takes, secretes, appropriates, obtains, or retains an elder's property for a wrongful use or with intent to defraud, or assists a third party in doing so. Cal. Welf. & Inst. Code § 15610.30(a). A defendant acts for a "wrongful use" if it "knew or should have known that this conduct is likely to be harmful to the elder." Cal. Welf. & Inst. Code § 15610.30(b). Plaintiff appears to allege claims under both Section 15610.30(a)(1) and Section 15610.30(a)(2).

**1. Direct Retention Theory**

Section 15610.30(a)(1) provides for liability when a person or entity "Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." Plaintiff alleges Wells Fargo breached this section by withholding the $7,678.33 it offered her in settlement. (Dkt. No. 21 at ¶ 100.) But, as discussed above, Plaintiff now agrees Wells Fargo paid her $7,608.27 in May 2025. And, in any event, these allegations do not plausibly suggest Wells Fargo intended to defraud her or that it knew or should have known its offer of these funds was likely to be harmful to her. To the extent the claim is based on Wells Fargo not crediting her account the $800,000 taken in unauthorized transactions, the FAC does not support a plausible inference Wells Fargo—as opposed to the unknown third-parties—took these funds. Plaintiff's reliance on *Paslay v. State Farm Gen. Ins. Co*., 248 Cal. App. 4th 639 (2016), is thus misplaced. The court there held "a merely incorrect denial of policy funds" cannot "constitute a 'wrongful use' of those funds for purposes of an elder abuse claim"; instead, "wrongful conduct occurs only when the party who violates the contract actually knows that it is engaging in a harmful breach, or reasonably should be aware of the harmful breach." *Id*. at 658. Plaintiff has not plausibly alleged facts supporting an inference of such conduct by Wells Fargo.

**2. Assisted Theory**

Section 15610.30(a)(2) covers "[a]ssist[ing] in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." Plaintiff does not allege any facts supporting this theory and instead restates the legal elements of the claim. (Dkt. No. 21 at ¶ 104.) In her opposition brief, Plaintiff contends Wells Fargo violated this section because its "internal system permitted a third party to unilaterally enroll a non-digital 91-year-old customer into online banking, alter statement delivery preference without two-factor authentication or verification, and divert monthly paper statements." (Dkt. No. 28 at 30.) These facts are not alleged in the FAC. However, even if they were, as with the subsection (a)(1) claim, Plaintiff has neither alleged facts nor suggested she could allege facts supporting an inference knew or should have known third-parties were performing these actions

without Plaintiff's knowledge or that it intended to defraud her.

Accordingly, Plaintiff has not alleged facts or suggested she could allege facts which support an inference Wells Fargo committed financial elder abuse.

**CONCLUSION**

For the reasons stated above, the Court DENIES the motion to dismiss Plaintiff's breach of contract claim based on Wells Fargo's alleged failure to credit her account during its investigation in violation of the Deposit Agreement. The motion to dismiss is otherwise GRANTED without leave to amend as Plaintiff has had the opportunity to amend her claims, and further amendment would be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad.") (cleaned up).

Wells Fargo's answer is due in 21 days.

The Court sets an initial case management conference for January 20, 2027 at 2:00 p.m. via videoconference. The parties shall file a joint case management conference statement by January 13, 2027. In the statement Plaintiff shall address whether she continues to contend she is entitled to $7,678.33 in restitution given her opposition brief states Wells Fargo paid her nearly this amount ($7,608.27) in May 2025.

This Order disposes of Docket No. 23.

**IT IS SO ORDERED.**

Dated: November 23, 2026



JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California